# CHARLESTON.

BOGGESS *v.* BUXTON, CLERK.

*Decided October 5, 1910.

1.   COURTS—*Jurisdiction of Supreme Court.*

   The Supreme Court of Appeals has jurisdiction of the writ of *mandamus*, though at the adoption of the constitution such writ did not apply to a subject matter to which it has since been made applicable by statute.

2.   CONSTITUTIONAL LAW—*Remedies—Power of Legislature.*

   The legislature has power to formulate, prescribe, modify and alter remedies, so its action does not impair the obligation of contracts or vested property rights.

3.   COURTS—*Jurisdiction of Supreme Court.*

   Section 89 of chapter 3 of the Code (1906) is not contrary to the constitution, Art. VIII, section 3, in giving the Supreme Court of Appeals jurisdiction by *mandamus* to compel election officers to legally perform their duties.

4.   CONSTITUTIONAL LAW—*Jurisdiction—Interference with Political Parties.*

   In absence of statute, courts do not exercise jurisdiction to interfere or control, in matters purely political, pertaining to the management and proceedings of a political party.

5.   ELECTIONS—*Interference of Courts with Political Parties.*

   When the state and congressional committees and a congressional convention and a state senatorial convention of a political party have had the claims of two contesting county executive committees to represent the party before them for decision, and have decided that one of them is, and the other is not, the true and legitimate county executive committee, the courts will not review such decisions, but will hold it conclusive in matters before the courts involving the question which is the lawful county executive committee.

6.   SAME.

   It is the duty of a clerk of a circuit court to appoint as a ballot commissioner to represent a political party on the board

(*Opinion not filed until October 18, 1910.)

of ballot commissioners a person designated by the chairman of the county executive committee, when that particular committee has been held and recognized as the true and legitimate committee in contests between two competing committees before the state and congressional committees and the congressional and· senatorial nominating conventions, involving the right of such county committees to act for the party.

7. MANDAMUS—*Grounds.*

The clerk of a circuit court has not sole and final power to decide which of two persons designated by·the chairmen of two competing county executive committees of a political party for appointment as ballot commissioner; but his action is subject to review and control by the courts. He can be compelled by *mandamus* to appoint the proper person.

[POFFENBARGER. JUDGE, absent.]

Application of A. L. Boggess for a writ *mandamus* against Charles Buxton, clerk, and others.

*Writ Awarded.*

*John L. Whitten* and *B. H. Blagg,* for petitioner.

*George E. Price* and *W. M. O. Dawson,* for respondents.

BRANNON, JUDGE:

The executive Committee of the Republican Party in Mason County issued calls, on the 19th day of May, 1910, for primary elections, one for selection of delegates to represent the Republicans of that county in the Republican Convention of the Fifth Congressional District; the other for the nomination of candidates for the House of Delegates and county officers, the selection of delegates to a senatorial convention, and the election of members of a county central republican committee. One of these calls caused dissatisfaction and dissension within the party, and the result was that the central committee met, and reorganized the county executive committee, removing all members, except one, and appointed new men in their places. The central committee, when full, consists of ten members, one from each magisterial district; but John S. Brannon, a member of that committee, being dead, five members claiming right as a majority of nine, appointed Robt. O. Boggess in Brannon's place as a member of the central committee, making the com-

mittee to consist of ten members; and then such central committee, by a vote of six, including Boggess, made up said new executive committee. This reorganized executive committee called primary elections for the selection of delegates to the congressional convention, and for the selection of a new central committee and nomination of a county ticket, and issued a call for a mass convention to name delegates to the senatorial convention; and the result was that there were two competing sets of delegates to the congressional and senatorial conventions, and two competing nominated sets of candidates for the House of Delegates and county officers, and two central committees. The republican committee of the fifth congressional district met before the primaries were held to determine which of the two competing primary election calls was the legitimate one, and it was decided that the action of the central committee, in revising and changing the call for a primary election of congressional delegates was valid, and that the call of the old executive committee was not valid, having been altered and partially revoked by the central committee, and the call of the reorganized committee for such primary election was binding, and that the action of the central committee in removing members of the old county executive committee and appointing new members was binding. Of this meeting the old committee had notice. The congressional convention which later assembled appointed a committee on credentials, and it decided in the same way, seating the delegates selected under the call of the reorganized committee, and its action was confirmed by the convention, and the delegates claiming under the primary called by the new executive committee were seated. The delegates selected under the call of the old committee appeared before the credentials committee.

This contest went also before the Republican State Committee, and was heard by it, and its decision was that the new county executive committee was the true one, authorized to act as it did. The reorganized executive committee called a county mass convention to send delegates to the republican convention for the nomination of a candidate for the State Senate for the fourth district, and delegates were by it appointed. A contest was made between these delegates and those named at the primary election called by the old committee, and this con-

test was decided by the committee on credentials in favor of the delegates chosen by said mass convention, the committee reporting to the convention that after hearing all the evidence presented by the contesting delegates such was their decision, and the convention unanimously adopted the report.

Under the call of the reorganized executive committee for the county primary election, a new central committee was elected, and that committee elected a new executive committee, making Chas. W. Juhling chairman thereof. Under the call of the old committee for a like primary election, another alleged new central committee was elected, which elected another alleged executive committee, making R. E. Mitchell chairman thereof.

Though not important under the principles controlling our decision, more votes were polled in each of the two primaries held under the calls of the reorganized committee than in the primaries held under the calls of the old committee.

Under Code (1906) ch. 3, section 32, Juhling designated, in writing, to Charles Buxton, clerk of the circuit court of Mason county, A. L. Boggess for appointment by said clerk as a ballot commissioner to represent the republican party on the board of ballot commissioners, and Mitchell designated F. G. Musgrave for ballot commissioner. Juhling and Boggess demanded of Buxton that Boggess be appointed; but Buxton refused to recognize Juhling as chairman of the executive committee, authorized to designate a ballot commissioner, and, on the contrary, recognized Mitchell as the lawful chairman, and under his designation appointed Musgrave. Boggess asks from this Court a writ of *mandamus* to compel Buxton as clerk to appoint him as such ballot commissioner.

This case has been very ably and elaborately argued, and, for this reason, as well as for the principles involved, requires a full statement of the reasons for our decision.

The first question arises from the contention of defendant's counsel that this Court has no jurisdiction to entertain this case. This contention rests on the fact that, though the constitution adopted in 1872 gives the Supreme Court original jurisdiction "in cases of *mandamus*", it must be the writ as it existed then, the writ having only the scope and remedial operation which it then had, applicable only to such subject

matters as it then applied to, and that the legislature could not enlarge its remedial efficacy and make it cover subjects which the writ did not then embrace. It was argued that this Court held in *Marcum* v. *Ballot Commissioners*, 42 W. Va. 263, that whilst *mandamus*, before the act of 1893, re-enacting section 89 of chapter 3 of the Code, would not cover a case involving the exercise of judicial discretion, yet that act, as to election matters, enlarged its operation and applied the writ to all duties of election officers, compelling them to do duties, though involving discretion and judgment; and that this enlargement of the function of the writ renders the act unconstitutional, as applied to this Court. It was contended that this holding was either wrong, or the act so invalid. We do not see our way clear to disregard that case. It was argued that the clerk of the circuit court, in deciding which of two contesting nominees for appointment as ballot commissioner, must inquire into facts, and pass judicially on the matter, and therefore *mandamus* would not lie. It may be questioned whether his duty is not purely ministerial, and so *mandamus* lies; likely it is. In *Dunlevy* v. *County Court*, 47 W. Va. 513, it is held that the act of 1893 intended to take away all judicial functions from election officers and make them only ministerial and thus apply *mandamus* in every case. Under that case there could be no question as to *mandamus* lying in this case. Both the *Marcum* and *Dunlevy Cases* give *mandamus* in the present case. The question whether the action of the ballot commissioners in determining which nominee of two should go on the ballot was, in nature, *quasi* judicial, perplexed me in the *Marcum Case*, and in remarks in *Morris* v. *Board*, 49 W. Va. 264, I suggested it as a question. I may have been wrong in indicating, in the *Marcum Case*, that some duties of election officers were *quasi* judicial in nature. I am not prepared to so admit. In the *Marcum Case* a board of three ballot commissioners was acting, here one clerk. There may be a difference. But it is not material whether we regard duties of election officers as always purely ministerial or judicial, because the *Marcum* and *Dunlevy* and *Morris Cases* say that *mandamus* lies to control action of election officers. Even though we say that some of their duties are judicial in nature, yet it was within the power of the legislature to enlarge the operation of

the writ of *mandamus,* for prompt remedy, and compel proper action by such officers, whether the duty be only ministerial or *quasi* judicial, unless that statute be unconstitutional as applied to the Supreme Court.

Is the act so unconstitutional? We say that it is not. "Remedies and remedial process are always subject to the control of the legislature." Black's Cons. Law 497. In *Bronson* v. *Kinzie,* 1 How. (U. S.) 311, 315, 316 the Court says: "Undoubtedly, a state may regulate at pleasure the modes of proceeding in its courts in relation to past contracts as well as future. * * * * * Whatever belongs merely to the remedy may be altered according to the will of the state, provided the alteration does not impair the obligation of the contract. But if that effect is produced, it is immaterial whether it is done by acting on the remedy or directly on the contract itself. In either case it is prohibited by the Constitution." Cooley's Cons. Lim. at pages 405-06, lays down the law as follows: "Whatever belongs merely to the remedy may be altered according to the will of the State, provided the alteration does not impair the obligation of the contract; and it does not impair it, provided it leaves the parties a substantial remedy, according to the course of justice as it existed at the time the contract was made. It has accordingly been held that laws changing remedies for the enforcment of legal contracts, or abolishing one remedy where two or more existed, may be perfectly valid, even though the new or the remaining remedy be less convenient than that which was abolished, or less prompt and speedy. 'Without impairing the obligation of the contract, the remedy may certainly be modified as the wisdom of the nation shall direct.'" See 3 Va. & W. Va. Dig. 221. We cannot realize that the convention and people adopting the constitution intended to hamper the necessary and ordinary powers of the legislature to formulate, prescribe and modify remedies. The constitution gives the supreme and circuit courts equal and concurrent jurisdiction in *mandamus,* and yet the position of counsel would give one function, a greater one, to the action in the circuit court, another in the supreme court; for it was conceded by counsel that the legislature could enlarge the effect of the writ in circuit courts by bringing under the writ matters not under it at common law. There cannot be such a difference

in the functions of the writ in the two courts. The constitution makes no such discrimination, no such restriction upon the office of this remedy, in the supreme court, and we should not put such a construction on the constitution without words plain. The constitution gives this Court jurisdiction "in cases of *habeas corpus, mandamus* and prohibition." The word is "cases", which means the form of action, the process, not the particular subject matter. So the case is a *mandamus* under the law, this jurisdiction exists, though it may be that before a statute the matter would not be cognizable under the writ.

I will add that even if we held the act inoperative to give this Court jurisdiction in this case, there would still be jurisdiction to allow Boggess the writ to be inducted into an office, this writ lying without statute at common law to admit one to office under old and late cases cited in *State* v. *Shumate,* 48 W. Va. 363, and *Kline* v. *McKelvey,* 57 W. Va. 29.

Which has right to be appointed ballot commissioner, Boggess or Musgrave? We do not find it necessary to say whether or no the central committee had power to fill the vacancy in its membership arising from the death of one of its members; or, if it could do so, whether it must do so by at least six votes, a majority of the full committee of ten, or could do so by a vote of five, a majority of nine members after the death of Brannon. Nor even whether the new executive committee is the true one. Our decision is based on the fact that the congressional and state committees, and the congressional and senatorial conventions and committees on credentials have heard both sides as to their claims to legitimacy upon contest, and have decided that the reorganized county executive committee, of which Juhling is chairman, is the true committee. The state executive committee has so held, and the conventions of the party and their committees have seated t delegates, deriving title through that reorganized comm and if we give force to their adjudications upon these litical matters, we must inevitably say that Boggess has to be appointed ballot commissioner, since his is the source of title as those delegates to those convention shall we not defer to and recognize those decisions party authorities? What other light shall guide

matter is political. We have no statute directing us, no fixed rule of law. The matter is within the domain of politics. Those party conventions and committees are, we may say, courts or tribunals of the republican party with known and acknowledged jurisdiction to entertain and decide contests and other political matters. Their decisions are *res judicata,* as to such political matters, so far as we can here use those words. As a Court, we cannot reverse those decisions. To do this, we would be blind to what everybody knows and what we know by judicial cognizance, that great political organizations, by their committees, conventions and nominations of candidates for public office, and active and controlling participation in elections, wield decisive influence in government. Their proceedings within their sphere must not be ignored. It would be ridiculous, very hurtful, for the supreme court to go back of the action of those party authorities, review all the facts and circumstances, and say whether the action of the old committee, in calling primaries, was wrong, whether the central committee lawfully filled a vacancy in its membership by a proper vote, whether its selection of a new executive committee was binding, whether its call for primaries and county convention was regular. That would be to make this a political, partisan body, regulating and controlling a political party, make the Court a political body. We disclaimed such function and power in *Marcum* v. *Ballot Commissioners,* 42 W. Va., on page 272, where we said: "There must be some limitation to our powers. That is the convention whose nominations are in question before us. To hold otherwise would be for this Court to assume power to supervise and review the organization of political conventions— practically to organize them." In that case we were asked to go back of the action of conventions selecting delegates to a nominating convention, and say that certain delegates to the [lat]ter were improperly chosen, and therefore certain nominees [we]re not such. We declined this power. This Court expressed [l]ike view in *Kump* v. *McDonald,* 64 W. Va. 323, holding that [co]urts do not exercise jurisdiction in matters purely political [perta]ining to the management and proceedings of a political [party e]xcept so far as authorized by statute." In support of [this posi]tion, I quote from 15 Cyc. 330: "In the absence of [statut]e giving them jurisdiction, the courts have no power

67 W. Va.

to interfere with the judgments of the committees and tribunals of established political parties in matters involving party government and discipline. It is much more proper that questions which relate to the regularity of conventions or nominations of candidates and the constitution of committees should be determined by the regularly constituted party authorities than to have every question relating to a caucus, convention, or nomination determined by the courts, and thus in effect compel them to make party nominations and regulate the details of party procedure instead of having them controlled by party authorities. Thus the action of a state convention in deciding between two contesting delegations is conclusive." That to justify interference by courts in such matters there must be a statute, see 10 Am. & Eng. Ency. L. 660. In *Cain* v. *Page* (Ky.), 42 S. W. 336, a statute allowed a county executive committee to pass on contests between candidates for nomination for office, and the question was whether the county committee deciding a contest was properly constituted, and the state convention of the Democratic party held that such committee was a valid one, and the supreme court said that "the action of the state convention of the party recognizing the committee in question as the regularly organized committee is conclusive upon the courts." The court said: "The voice of that convention was the very voice of the Democratic party. The word of the convention is the law of the party, and courts cannot look beyond this word or this law, because there is no other." The same principle was followed in *Moody* v. *Trimble* (Ky.), 58 S. W. 504 (50 L. R. A. 810). *In re Pollard,* 25 N. Y. Supp. 387, the court said of this rule: "The adoption of a different rule will inevitably tend to bring party organizations and the courts into unseemly conflicts over questions which are peculiarly within the cognizance of the former tribunals—a result which most certainly ought to be avoided." *In re Fairchild,* 151 N. Y. 359, the court said it was more proper that matters relating to nominations and the constitution of committees should be determined by party authorities than to have every question of caucus, convention or nomination determined by the courts, and thus, in effect, compel the courts to make party nominations and regulate the details of party procedure. I cite the well considered North Da-

kota case, *State* v. *Lindhle,* 91 N. W. 950.   Its syllabus reads: "After a contest on the merits after notice, and a full and fair hearing before the state central committee, a decision of such committee that certain delegates from a county convention be seated in the convention, and that the opposing delegates be not seated, followed by the adoption of the state convention of the decision and report of such committee, the courts will not interfere with such action of the convention, but such action of the convention will be deemed conclusive, even as against those persons nominated in a rival county convention for county officers."   We do not say what would be the powers of the courts in the absence of such decisions by political authorities.

We do not know or say what may be the power of a Republican State Committee in such a matter as that before us.   We do say, however, that in this case both sides to this contestation appeared before that committee and submitted their claims, and thus came under the jurisdiction of that committee, and submitted to its jurisdiction, and they cannot now deny its determination.   They are estopped to do so.   Upon principles of voluntary arbitration this is so.   See *State* v. *Weston,* 27 Mont. 194.

I remark that the primary elections held under the call of the reorganized committee polled more votes than did those held under the other committee, showing preponderance of popular approval of the party reorganization, as representing the party's sentiment, though under the principle on which we rest our decision, this is not material.

It was argued by counsel that the clerk had sole and exclusive power to say which of the contestants should be appointed ballot commissioner, and that he is not subject to judicial control.   We cannot for a moment entertain this proposition.   It is plainly contrary to the intent of the Act of 1893, and would put a wide arbitrary power in the clerk's hands. The cases above cited and others overrule this contention.

The writ is awarded.


Brannon, Judge:

I make this postscript note after decision to cite the following point in *State* v. *Lesueur,* 103 Mo. 253, "An agreement

between opposing candidates for nomination for office to submit their claims to the state committee of their party is binding on them by way of estoppel."

*Writ Awarded.*

Williams, Judge (*dissenting*) :

I can not agree to the majority opinion for the following reasons, viz:

(1)  I do not think this Court has original jurisdiction of the case.  It is an original application to this Court for *mandamus* to review the action of the circuit clerk in appointing F. G. Musgrave as republican ballot commissioner in the county of Mason, and to reverse his action and compel him to appoint petitioner in his stead.  There were two executive committees of the republican party in said county, each claiming to be the regular one.  The chairman of each of said executive committees made nominations for ballot commissioner.  The one designated by the chairman of the regular committee only could be appointed.  It, therefore, became necessary for the clerk to investigate the facts, and ascertain which committee was regular, and to appoint the person named by him, if he was otherwise qualified.  The nature of the case presented a judicial, not a ministerial, question; it required the clerk to make an examination of the facts, and to apply the law to them.  In the language of Brannon, Judge, in the *Marcum Case*, 42 W. Va., at page 266:  "This was then a judicial question, called *quasi* judicial when the matter is before an officer or a tribunal, not a court; and such a question can not be made the basis of a *mandamus* at common law."  This, I think, is absolutely sound.  The clerk in the present case had a question to decide similar to the one to be decided by the ballot commissioners in that case.  Now, if such a question could not be reviewed on *mandamus* at the common law, I do not think the legislature can confer original jurisdiction on this Court to review it, by an enlargement of the writ.  I do not deny the power to the legislature to modify, or even take away a remedy, provided that such modification or substitution of remedies does not interfere with vested rights.  But I do not think the legislature has the power to so enlarge the scope of a writ

as to make it embrace matters over which this Court did not have original jurisdiction at the time of the adoption of the constitution, and thereby, indirectly, extend the original jurisdiction of this Court over matters not granted to it by the constitution. Neither do I deny the power of the legislature to regulate the jurisdictions of courts, when not forbidden to do so by the constitution. It is admitted that the question which we are asked to review by *mandamus* could not have been reviewed upon such writ prior to the enactment of section 89 of chapter 3 of the Code, either by this Court, or by a circuit court. Now, section 3, Article VIII of the Constitution, gives this Court original jurisdiction only in cases of *habeas corpus, mandamus,* and prohibition. The original jurisdiction in *mandamus,* then, must be taken to mean jurisdiction of such matters only as were comprehended by the use of the writ as defined by the common law. If it be true that the legislature has power to confer original jurisdiction on this Court in this case, by enlargement of the writ of *mandamus,* as held in the majority opinion, it would necessarily follow that it has power to confer original jurisdiction in almost any case, simply by enlarging the scope of writs and remedies.

So far as I know, this is the first time this Court has had its attention called to the constitutional right of the legislature to thus enlarge the original jurisdiction of this Court. Nearly all of the *mandamus* cases, involving questions pertaining to the election laws, have been brought here on writs of error to the circuit courts, and the question of original jurisdiction in this Court has never before been so much as mooted in the opinions in any of the decided cases; and hence, I regard it as an entirely open question.

(2) But I do not believe section 89 of chapter 3 of the Code was intended to confer jurisdiction on this Court, or on the circuit courts, to review, by *mandamus,* such a question as the petition in this case presents. I think the legislature intends that the writ shall embrace only such matters as are ministerial, and such as were comprehended by the writ at the common law; the statute is only declaratory of the common law. If the legislature intended to substitute *mandamus* for *certiorari,* because it is a more expedient remedy, why then did it retain the latter writ? There can be no reason for retaining

*certiorari* in election cases, if *mandamus* is intended to take its place.

Another potent reason supporting the view that the legislature did not intend *mandamus* to be used to control judicial, or *quasi* judicial action, is, that conflicting rights are always involved when such questions are to be decided, and the writ of *mandamus,* being a peremptory writ to compel the performance of an unquestionable legal duty, is addressed to the officer whose duty it is to perform the act, and by such writ the claimant of the right, or benefit to be derived by the act to be performed, is given no opportunity to be heard. The rights of parties would thus be determined without a hearing. The legislature, in my opinion, simply intended that *mandamus* should be used, in election matters, to compel election officers to perform purely ministerial duties, just as the writ was used at the common law to compel performance of ministerial duties in other matters, and that if the duty to be performed involved *quasi* judicial action, then *certiorari,* and not *mandamus* was to be the remedy. We have many statutes that are simply declaratory of the common law rules and principles. I do not think we can get around the question by saying that the circuit clerk is a ministerial officer; that all his acts are, therefore, necessarily ministerial; that he must determine all judicial questions right; and that, if he does not do so, his action can be reviewed by *mandamus.* Whether the question to be decided by the clerk is purely a preliminary question pertaining to his ministerial duty, or is a *quasi* judicial question depends upon the very nature of the question to be decided, and not upon the fact that the officer who decides it is a ministerial officer. This Court can no more convert a *quasi* judicial act into a ministerial one, by deciding that all the acts of a ministerial officer are ministerial acts, than it can change a law of nature. The quality of the act depends upon its nature, and not upon the official character of the officer.

This Court held, in the *Marcum Case,* that *mandamus* would not lie "to control or reverse the action of a court, board, or other inferior tribunal, or of an officer, where such action is one of discretion, judicial or *quasi* judicial." And, as I interpret the opinion in that case, it holds that the action of the ballot commissioners in determining that Harvey's and not

Marcum's name should go on the ballot, was a *quasi* judicial question. Now, if there is any distinction to be made between the action of the ballot commissioners in that case, and the action of the circuit clerk in the present case in deciding which is the regular one of two factional political committees, I confess that my mind is not able to grasp it. The question presented to the clerk is not one which the law contemplated that he would ever be required to decide, yet one which the discharge of his duty compelled him to decide. It is, therefore, a question collateral to, and not preliminary to the performance of his ministerial duty. It is a question which he was bound to determine *judicially,* preparatory to the performance of his purely ministerial duty. The question presented to him arose out of conditions which the election statute seems not to have contemplated would ever exist, and in respect to which the statute has made no provision. There is nothing in the statute to guide the clerk as to how he should determine such a question, and his decision of it is not one of his ministerial duties, within the meaning of the statute. Therefore, his decision of this collateral, judicial question, was never intended by the legislature to be reviewed by writ of *mandamus* from this or any other court. According to my understanding of the law as announced by this Court in both the *Marcum Case,* 42 W. Va., and later in the *Dent Case,* 45 W. Va. 750, the clerk's decision in this matter can not be reviewed in this manner.

(3)  But suppose I am wrong in my view concerning the power to review the judicial act of a ministerial officer on the writ of *mandamus,* still I am unable to agree with the majority in regard to the merits of the controversy. If the matter is one which merits the consideration of this Court then I know of no other way to decide it than upon an investigation of the facts, and an application thereto of the established rules and principles governing courts of justice. Must we say that because the state committee, and committees appointed by congressional and senatorial conventions have decided the question, that their decision is final, and binding on this Court, and that we are thereby precluded from going behind them, to look into the merits of the case? Are we precluded by their judgments from looking to the facts, even though we may clear-

ly see that their judgments are wrong? If such is the law then this Court finds itself in a position where, in many cases, if not in this one, it is bound by the action of a political committee, composed of men who are unsworn and, perchance, of men whose better judgment is blinded by partiality or favoritism, to lend its power to give validity to an act of injustice. I know of no rule, or custom, prevailing in any political party in this state which recognizes the power in a state committee, or any other committee, to determine the rights of conflicting county committees. Indeed, the answer in this case denies such power, right or custom in such committee, and none such is proven. I do not think the decision by the state committee, of the question involved, is entitled to as much consideration in this Court as the decision by the clerk himself. He is a sworn officer whose duty it is under the law to decide the question. The committee is not constituted by law a tribunal to decide such matters, and its members are not sworn. Furthermore, there is no evidence that the question was voluntarily submitted to the state committee for arbitration, under an agreement to abide by its decision. Consequently, the appearance of both parties before that committee for the purpose of contesting their rights should not affect the merits. The following cases hold that the decision of a state executive committee of a political party is not binding on a court in determining the regularity of local political conventions: *In re Broat,* 27 N. Y. Sup. 176; *In re Heacock,* 41 N. Y. Sup. 161.

It appears that the custom with the republicans of Mason county has been to elect, either in convention, or by primary election a county central committee composed of ten members, one from each magisterial district. This committee then appoints a county executive committee composed of five, or seven members, whose duty and right it is to manage the political campaigns. Each committee is selected for a period of two years, both derive their power from the republican party of Mason county, one directly, and the other indirectly. Now, there is no question but that the old executive committee was the duly appointed and regular one. If it was lawfully deposed by the central committee, it necessarily follows that the new committee is the regular one, but if not lawfully

deposed, then the committee selected under the call for a primary election issued by the old executive committee, and held on the 6th day of August, 1910, is now the regularly constituted central committee, and the executive committee selected by it, of which R. E. Mitchell is the chairman, is the regularly constituted executive committee, and said Mitchell would have the right to designate the republican member of the ballot commission. We do not have to depart from the pleadings to ascertain the facts. They do not depend upon the question of the regularity of contending factions of a primary election, or mass conventions, as in the *Marcum Case,* and as also in the cases cited in the majority opinion from New York, Kentucky and North Dakota. But the question, which is the regular one of the two contending factions, in the present case can be determined from the pleadings alone. The alternative writ sets forth how, and why the old central committee attempted to depose the old executive committee. If the attempted deposition was without authority, it follows that everything done thereafter by the substituted executive committee was irregular. There is no question that the old executive committee was constituted according to the political custom prevailing in the republican party of Mason county for many years. The old central committee had appointed it; and it is fully proven that such executive committee had, previously, exercised the right and power to conduct the political affairs of the party for two years, and until after the next succeeding county convention, or primary election. I do not believe, from the evidence in the case, that the central committee had the right, or the power, to depose, at its pleasure, the executive committee, and to substitute another in its place. According to the rules of law governing in cases where an officer is appointed to serve for a definite period of time, no such arbitrary power was vested in the central committee. *Helmick* v. *County Court,* 65 W. Va. 231. But let it be assumed that it did have this power, it can still be said that it never exercised it. It is true that some of the members of the county central committee assumed to act for the committee; less than a quorum of such committee met and went through the form of deposing the old executive committee, and attempted to put a new one in its place. But their act in this regard was void.

It is a well established parliamentary rule, that it requires a majority of the whole number of the members of any board, or committee in order to constitute a quorum for the transaction of business, unless authority be given to a less number by the body constituting it.  29 Cyc. 1688; *United States* v. *Ballin,* 144 U. S. 1; *Heiskell* v. *The Mayor,* etc., 65 Md. 125; *Ex parte Willcocks,* 7 Cow. (N. Y.) 402 (17 Am. Dec. 525); *Commonwealth ex rel. Clark v. Read,* 2 Ashm. (Pa.) 261; *Cotton Mills* v. *Commissioners of Cleveland County,* 108 N. C. 678; *Stanford* v. *Ellington,* 117 N. C. 158; *Blacket* v. *Blizard,* 17 E. C. L. 508; *Spencer* v. *Maloney,* 28 Col. 38.

The full membership of the county central committee was ten; and only five members of the old central committee were present when they assumed to depose the old executive committee.  They first attempted to fill a vacancy in the central committee; but according to the law above cited they were powerless even to fill a vacancy.  The new member was not a lawfully constituted committeeman, and all their proceedings were void.  A quorum was just as much lacking after the pretended appointment of the new member, as before.  So that, applying the rules and principles of law regulating bodies of like nature, and I know of nothing else to apply in the decision of a matter, whether it relate to personal rights, property rights, or political rights, the entire proceeding by the old central committee was only a pretense, and was absolutely void, and conferred no authority on the new executive committee.  It then follows, as a matter of course, that the old executive committee was the regular one, and that the central committee chosen at the primary election, held pursuant to its call, was the regularly constituted new republican central committee, and that R. E. Mitchell, the chairman of the new executive committee appointed by it, is now the regularly constituted chairman of the republican executive committee of Mason county.  I do not think the political wrong attempted to be consummated by less than a quorum of the old central committee should be sustained in a court of justice on the ground that such action has been sanctioned by committees appointed by congressional and senatorial conventions, and by the state central committee.  Two wrongs can not make a right, even though the right be only a political one.  So that, instead of the rela-

tor's showing himself entitled to the office which he seeks, if the position of ballot commissioner can properly be called an office, by a clear legal right thereto, as the authorities all hold he should do before the writ will lie, his own pleadings show that his claim is without legal foundation. Relying upon the law in general, governing the use of the writ of *mandamus,* and upon the decisions of this Court in the *Marcum Case,* 42 W. Va. 263, and the later *Dent Case,* 45 W. Va. 750, in particular, I would refuse the writ in this case.