STATE OF WEST VIRGINIA *ex rel.*

C. A. BLANKENSHIP, *Clerk of the House of Delegates of West Virginia*

*v.*

THOMAS E. MCHUGH, *Judge of the Circuit Court of Kanawha County, West Virginia*

(No. 13602)

Decided July 15, 1975.

*Victor A. Barone, Jack M. McCarty* for relator.

*Stone, Bowles, Kauffelt & McDavid, Gary G. Markham, Larry A. Winter, Prosecuting Atty., Kanawha County* for respondent.

SPROUSE, JUSTICE:

In this prohibition proceeding, C. A. Blankenship, Clerk of the House of Delegates, seeks to prohibit Thomas E. McHugh, Judge of the Circuit Court of Kanawha County, from acting further in a mandamus case pending in the Circuit Court and designated as *State ex rel. Herndon v. Blankenship*, Misc. 75-382. The essential issue involved is whether a former refusal by this Court to issue a rule in mandamus deprives a circuit court of

authority to consider an identical case prosecuted by and against the same parties.

On May 19, 1975, Senator Judith A. Herndon filed a mandamus petition in this Court in her capacity as a citizen, taxpayer and member of the Senate of the State of West Virginia. She sought to compel C. A. Blankenship to report and enroll all Acts of the Legislature, Regular Session, 1975, passed by both houses, omitting therefrom certain enumerated enrolled bills which she contended were passed in violation of Article VI, Section 29 and Section 51 of the Constitution of West Virginia. The essence of this action was to question the constitutionality of revenue measures which were not, according to contention, "fully and distinctly read" on three separate days as required by Section 29 of Article VI of the Constitution of West Virginia.

This Court, on May 26, 1975, considered and refused the mandamus petition instituted by Senator Herndon stating by order: "On a former day, to-wit, May 19, 1975, came the petitioner, Judith A. Herndon * * * and presented to the Court her petition * * * and note of argument * * * praying for peremptory writ of mandamus to be directed against C. A. Blankenship, Clerk of the House of Delegates of West Virginia, as therein set forth. Upon consideration whereof, a majority of the Court is of the opinion that a rule should not be awarded, and the prayer of the petition is therefore denied. Justices Haden and Neely would grant."

Subsequently, on June 6, 1975, Senator Herndon filed a substantially identical petition, again seeking relief in mandamus, in the Circuit Court of Kanawha County. The circuit court, respondent McHugh as Judge thereof, issued a rule to show cause, returnable June 16, 1975.

C. A. Blankenship thereafter petitioned this Court for a writ of prohibition to prohibit further proceedings. We issued a rule to show cause and, on the return day of the rule, the case was submitted for decision upon the petition filed by relator Blankenship, the rule to show cause heretofore issued by this Court, the answer of

respondent McHugh, a demurrer to the answer filed by the relator, and upon briefs and oral arguments of counsel.

The relator maintains that the provisions of Code, 1931, 53-1-2 and 53-1-5, as amended, preclude a circuit court from issuing a rule in mandamus in face of a former adjudication by this Court refusing such a rule upon a substantially similar petition. The argument is predicated upon the theory that a refusal to issue a rule constitutes a "cognizance" of the case and an adjudication that no "prima facie" case was established by the petition.

Code, 1931, 53-1-2, as amended, provides in part as follows:

> "Jurisdiction of writs of mandamus and prohibition (except cases whereof cognizance has been taken by the supreme court of appeals or a judge thereof in vacation), shall be in the circuit court of the county in which the record or proceeding is to which the writ relates. * * *"

Code, 1931, 53-1-5, as amended, provides in part:

> "The court or judge to whom the petition in mandamus or prohibition is presented shall, if the petition makes a prima facie case, issue a rule against the defendant to show cause why the writ prayed for should not be awarded. * * *"

The respondent circuit judge contends, however, that such an interpretation would render these statutes unconstitutional as an improper legislative impairment of a constitutional grant of jurisdiction to circuit courts. Sections 3 and 6 of Article VIII of the Constitution of West Virginia grant original and concurrent jurisdiction in habeas corpus, mandamus, prohibition and certiorari to this Court and all circuit courts.

This Court in *Halltown Paperboard Company v. The C. L. Robinson Corporation*, 150 W. Va. 624, 148 S.E.2d 721, held in the third point of the syllabus:

> "When a court, created and in existence by virtue of the Constitution, is granted certain jurisdiction by that document, the legislature has no

> power to impair the essential nature or jurisdiction thereof unless specific authority is conferred upon the legislature by the Constitution."

In *Halltown* the legislative enactment completely deprived circuit courts of jurisdiction in certain matters and reposed them solely in an administrative board—a clear violation of this basic rule of constitutional law. As this Court said in *Howard v. Ferguson*, 116 W. Va. 362, 368, 180 S.E. 529, 532: "* * * If there be conflict between constitutional inhibition and legislative enactment, the courts must adhere to the former and disregard the latter. * * *" Such an elementary proposition requires no further discussion.

The question here, however, is whether Code, 53-1-2 and Code, 53-1-5 deprive the circuit courts of constitutional jurisdiction or merely define more explicitly the nature of the extraordinary remedies within the constitutional framework.

When Sections 3 and 6 of Article VIII of our Constitution were originally adopted, the permissibility of successive applications for extraordinary relief in mandamus or prohibition was controlled simply by common-law concepts of former adjudication. *See*, 52 Am. Jur. 2d *Mandamus*, § 2, page 331. Constitutional authority to alter common-law principles, however, was specifically conferred upon the Legislature by Article VIII, Section 13 of the Constitution of West Virginia. That section provides: "Except as otherwise provided in this article, such parts of the common law, and of the laws of this State as are in force on the effective date of this article and are not repugnant thereto, shall be and continue the law of this State until altered or repealed by the legislature." While the Constitution prescribes the jurisdiction of courts to entertain and consider specific remedies, the various legal and equitable attributes of the remedies may be formulated, prescribed or altered by the Legislature.

This principle was clearly and decidedly recognized in *Boggess v. Buxton*, 67 W. Va. 679, 69 S.E. 367.

*Boggess* involved a statute extending the authority of this Court to entertain mandamus cases in certain election proceedings. At common law the writ did not encompass such subject matter. The respondent argued in *Boggess* that the scope of mandamus jurisdiction in this Court permitted by the Constitution was limited to cases cognizable in mandamus at common law. In rejecting this contention, the Court stated:

> "* * * 'Remedies and remedial process are always subject to control of the legislature.' * * * 'Undoubtedly, a state may regulate at pleasure the modes of proceeding in its courts * * *. Whatever belongs merely to the remedy may be altered according to the will of the state, providing the alteration does not impair the obligation of the contract * * *.' * * * We cannot realize that the convention and people adopting the constitution intended to hamper the necessary and ordinary powers of the legislature to formulate, prescribe and modify remedies. * * *" *Boggess v. Buxton, supra* at 684, 69 S.E. at 370.

*Boggess* established legislative authority to enlarge the subject matter of mandamus. The Legislature by enacting Code, 53-1-2 and Code, 53-1-5 has merely enlarged or altered certain procedural aspects regarding the remedy. This is a permissible exercise of legislative prerogative within the framework of basic jurisdictional concepts defined in our Constitution.

The respondent circuit judge further contends that, if these sections of the statute are constitutional, cognizance of this case has not been taken by this Court within the meaning of Code, 53-1-2. It is asserted that the refusal of this Court to issue a rule to show cause without stated reason, notation or opinion, is not a decision on the merits, but amounts to a mere unwillingness to exercise jurisdiction. "Cognizance", it is argued, requires a consideration of the case on the merits, and the historically prerogative nature of mandamus permits a discretionary refusal to issue a rule in mandamus with-

out a determination on the merits. It is argued, therefore, that the possibility of having refused a rule upon discretionary grounds precludes any contention that the court took "cognizance" because it could not be known whether we determined that no "prima facie" case was established or merely refused to consider the petition.

Appellate courts, exercising original jurisdiction concurrently with trial courts, frequently deny summarily a petition for extraordinary relief without considering the merits of the petition. In such cases a trial court has authority to consider anew the same petition. This jurisdictional concept has been accepted without dispute.

> "* * * [T]he fact that inferior courts also have original jurisdiction concurrent with appellate courts with respect to the writ has been considered as ample ground for appellate courts in their discretion to refuse to assume original jurisdiction, since the remedy in the lower court is in the nature of another adequate remedy. In the application to a court of last resort for a writ of mandamus it may be necessary to show why it is essential or proper that the writ should issue from that court, rather than from a lower court having concurrent jurisdiction, and in the absence of such a showing the Supreme Court may refuse to assume jurisdiction." 52 Am. Jur. 2d, *Mandamus*, Section 44, page 369.

Implicit within the principle that "the remedy in the lower court is in the nature of another adequate remedy" are considerations involving the nature of court structure. A trial court is obviously better equipped, both from the standpoint of facilities and procedures, to make factual determinations often required in extraordinary remedy proceedings. This type of litigation continues to multiply in tremendous proportions. Trial courts are structurally designed to handle more efficiently cases in larger numbers, separating the frivolous from the meritorious. The ultimate advantage resulting from adherence to this principle is the promotion of expeditious justice in cases where urgency and importance warrant

an exercise of original jurisdiction by appellate courts. *See, People ex rel. Kocourek v. Chicago,* 193 Ill. 507, 62 N.E. 179; *State ex rel. Dunn v. Moores,* 72 Neb. 5, 99 N.W. 842; *State ex rel. Malmo v. Case,* 25 Wash.2d 118, 169 P.2d 623.

*Funeral Directors Ass'n. v. Board of Funeral Directors and Embalmers,* 22 Cal.2d 104, 136 P.2d 785, and its progeny of cases, upon which the respondent principally relies, are outstanding examples of the utilization of this procedure. In *Funeral Directors,* the Supreme Court of California held its denial of a petition ex parte and without written opinion did not deprive a lower court, having concurrent jurisdiction, of the authority to entertain a similar petition for a writ of mandamus. It said:

> "Both this court and the District Courts of Appeals have consistently declined to exercise original jurisdiction in the issuance of a preliminary prerogative writ where the circumstances are such that application for the writ could properly have been made to a lower court. Under such circumstances the petition will be denied 'without prejudice to the right of petitioners to seek such relief as they may be advised they are entitled to in the proper tribunal.' * * * We reiterate that 'It has never been the policy of this court to encourage the institution of proceedings herein * * * when such proceeding could as well have been instituted in the first instance in the superior court of the county where the controversy arose.' (Citations omitted)
>
> "The denial shown by our minute order * * * must be construed to constitute simply a refusal by this court to exercise its original jurisdiction. *It does not appear that any sufficient reason was shown for not making the application to the superior court in the first instance.* The minute order, under such circumstances, was not intended to be and is not an adjudication upon the merits of the facts presented in the application." (*Emphasis* supplied.) *Funeral Directors Ass'n. v. Board of*

*Funeral Directors & Embalmers, supra* at 110, 136 P.2d at 788-89.

In *Funeral Directors* the appellate court did not take "cognizance" of a petition, but in the exercise of its discretion denied relief without a written opinion. It is not possible under the California procedure to know if that Supreme Court refused to issue a rule for discretionary reasons discussed therein or for some other reason. Their trial courts having concurrent jurisdiction, therefore, must have authority to consider initially all such cases refused by the California Supreme Court.

This Court effects the same result by utilizing Rule XVIII. There is a crucial difference, however, between the procedures outlined in *Funeral Directors* and those embodied in the provisions of Rule XVIII of this Court, which provides in part:

> "Original jurisdiction of this court should not be invoked if adequate relief appears to be available in a court of concurrent jurisdiction. If the application might have been lawfully made to a lower court in the first instance, the petition, in addition to the matters required by law to support the application, shall also set forth the circumstances which in the opinion of the applicant render it proper that the writ or rule should issue originally from this court and not from such lower court. If the court finds such circumstances insufficient, the court may on that ground refuse to issue the writ or rule prayed for without prejudice to the presentation thereof to a proper court having jurisdiction. Such refusal, without prejudice, to issue the writ or rule for this reason shall be noted upon the face of the petition."

If this Court refuses to issue a rule for the discretionary reasons discussed in *Funeral Directors* - we note that such refusal is without prejudice to its presentation in an appropriate circuit court. Conversely, if this Court refuses to issue a rule without a Rule XVIII notation,

the conclusive implication is that the refusal was based on reasons other than the exercise of this discretionary ground.

In determining the central issue in the case, the operative effect of Rule XVIII, therefore, must be considered together with the provisions of Code, 53-1-2 and Code, 53-1-5. Code, 53-1-2, directs that circuit courts shall have concurrent jurisdiction in writs of mandamus and prohibition "except cases whereof cognizance has been taken by the Supreme Court of Appeals * * *." Code, 53-1-5, requires that a rule to show cause shall be issued "if the petition makes a prima facie case * * *."

It is within this context that we must consider the result of our order refusing a rule in the Herndon case. Did that order reflect a finding by this Court that the petition did not present a "prima facie" case, or could it connote a refusal for discretionary reasons not touching upon the merits. If the latter were true, there would appear to be some validity to the relator's contention that "cognizance", as contemplated by Code, 53-1-2, was not taken.

This Court held in *State ex rel. Trust Co. v. Melton*, 62 W. Va. 253, pt. 8 syl., 57 S.E. 729, that: "Discretionary power to refuse the writ of *mandamus* will not be exercised in a case in which the legal right is clear, substantial and fruitful in benefits, and the plaintiff has done nothing out of which an equitable estoppel or defense in the nature of one can arise." *See also, State v. Davis*, 74 W. Va. 261, 82 S.E. 207. The petition for mandamus presented by Senator Herndon presented no issue relating to the exercise of any "non-Rule XVIII" discretion. Simply stated, the Herndon petition presented a single question of whether a prima facie case of clear legal right to relief was established. It is not necessary, however, to decide the central issue in this case on such a "case-by-case" consideration of whether there were elements presented requiring the exercise of judicial discretion.

The subject matter of mandamus and prohibition encompasses a broad range of considerations. An appellate court exercising original jurisdiction has discretion to refuse to issue a rule for many reasons other than those implicit in Rule XVIII. These other discretionary considerations, however, essentially effect the merits of the case. If this Court refuses to issue a rule in mandamus or prohibition without a "Rule XVIII" notation, then we have decided that no prima facie case exists for the issuance of such rule. Such determination necessarily includes any "non-Rule XVIII" discretionary considerations. In such case we have considered the merits to the extent necessary to make that determination.

This does not mean that we have fully considered the merits of the case as we would in a fully developed hearing so as to make applicable the doctrine of res judicata. It means simply that we have determined that no prima facie case was made. Having made that determination, "cognizance has been taken" of the proceeding by this Court within the meaning of Code, 1931, 53-1-2, as amended, and the Circuit Court of Kanawha County is without authority to consider the same petition.

The respondent advances one last constitutional argument in support of his position. Relying upon *Ex Parte Doyle,* 62 W. Va. 280, 57 S.E. 824, he contends that Rule XVIII as interpreted here constitutes an impingement upon the constitutional jurisdiction of the circuit court. We do not interpret *Doyle* in that fashion.

Rule XVIII does not imperatively require all litigants in original jurisdiction cases " to first apply to the circuit court" as was discussed in *Doyle.* Under Rule XVIII, we retain the power to exercise original jurisdiction in proper cases - where urgency, importance or justice dictate such a course. We assert our original jurisdiction in these extraordinary remedies, but we have prescribed a method of exercising that jurisdiction to the extent, however, and only to the extent, that *Doyle* and *Midland Investment Corporation v. Ballard,* 101 W.

Va. 591, 133 S.E. 316, may be inconsistent with this holding, they are expressly overruled.

For reasons stated in this opinion, the writ of prohibition as prayed for is awarded.

*Writ awarded.*