JAMES MCGRADY, CARL B. SHORT AND KENT RANDALL

*v.*

DAVID C. CALLAGHAN, *Director, Department of Natural Resources, et al.*

(No. 13952)

Decided January 17, 1978.

*Lee Adler* for James McGrady and Kent Randall.

*David R. Wooley, Richard E. Hitt* for Carl B. Short.

*Marianne Kapinos, Robert D. Pollitt,* Assistant Attorneys General, for respondents.

CAPLAN, CHIEF JUSTICE:

In this original proceeding in mandamus the relators seek to compel the respondents to revoke Surface Mining Permit No. 244-76 theretofore issued to the L. & F. Mining Company. By such permit the said company was granted the right to mine coal at Cool Ridge in Raleigh County, West Virginia. The relators also seek to require the respondents to perform certain other duties which they allege are mandatory under the law.

The relators, James McGrady, Carl B. Short and Kent Randall, residents of Raleigh County, allege that they

own farms or other real property located at various distances within one mile of the proposed surface mine operation covered by the subject permit. Mr. Short alleges that his property is adjacent to the proposed mine site.

The L. & F. Mining Company, on March 8, 1976, filed an application with the Department of Natural Resources (Department) for a permit to surface mine an area of land situate along Route 42 and Route 19/21 and the West Virginia Turnpike near Cool Ridge, in Raleigh County, West Virginia. Although the application did not contain all of the information required by *W.Va. Code*, 1931, 20-6-8, as amended, the respondents nevertheless caused a notice of said application to be published pursuant to the above statute. Residents of the area were thereby notified of the application for a surface mine and of their right to submit protests thereto.

Responding to the publication, the relators and other residents of the general area submitted more than a dozen letters of protest. Also, a petition seeking denial of the application, signed by 132 individuals and heads of families, was filed as a result of the publication. These protests related to possible damage due to blasting and possible damage to wells and widlife. They also expressed concern in relation to aesthetic values and pollution.

In April, 1976 the Department, by letter, informed the protestors that the permit application was not yet complete, but that their protests would be considered upon completion thereof. They were not notified of the completion of the application, nor was a notice of the completed application published prior to the issuance of the permit. The relators allege that they learned of the completed application in November, 1976, after the permit had been issued.

In their petition the relators assert that the due process clause of our constitution imposes a mandatory duty upon the Department to afford a hearing, prior to the

issuance of a permit, to all landowners whose property rights may be adversely affected by the operation of the proposed surface mine. This is the principal issue in this case and appears to be one of first impression.

In addition to the above ground the relators assert that mandamus lies to compel the respondents to perform their mandatory duties in the following respect: to deny the subject permit where the surface mine was within 100 feet of a public road; to deny the subject permit where a "hazard" exists to a public road; to require respondents to promulgate regulations for blasting operations near a public road; to require the respondents to follow statutorily imposed procedures regarding applications; and, to require the respondents to delete certain areas in general and the permit area in particular from surface mining.

The respondents deny that the relators are constitutionally entitled to a hearing prior to the issuance of a permit for surface mining. They contend that the protest procedure provided by statute is an adequate protective measure. Further, they assert, should a protestant be aggrieved by the result, appeal procedures are provided by statute whereby they may be fully heard, including the opportunity to present evidence.

The respondents further deny that surface mining will take place, under this permit, within 100 feet of a public road as prohibited by *W.Va. Code*, 1931, 20-6-11; that the mining permit constituted a hazard to a public road; that regulations for blasting operations have not been promulgated; that statutory procedures in regard to applications have not been substantially followed; and, that the statute (*W.Va. Code*, 1931, 20-6-11) mandatorily requires respondents to promulgate rules and regulations for the deletion of certain areas from surface mining. Also, the respondents assert that mandamus will not lie, contending that the petition for mandamus was unreasonably delayed, thereby prejudicing the rights of third parties. (The permit was issued on November 5, 1976 and this mandamus action was instituted on June

6, 1977). Furthermore, say the respondents, mandamus will not lie inasmuch as the relators have not exhausted their administrative remedies.

The relief sought by the relators is denied for two principal reasons. First, after full consideration of the arguments and reasons forwarded by the relators, we are of the firm opinion that there is no constitutional guarantee of a hearing, prior to the issuance of a permit, to these relators; and, secondly, administrative procedures are provided by statute whereby these relators could have availed themselves of a full evidentiary hearing but they failed to exhaust these administrative remedies. Consequently, the writ of mandamus is denied.

The principal ground for relief is that the relators were constitutionally entitled to a hearing prior to the issuance of a permit to surface mine and that they were denied that right. No cases have been cited in which this issue has been considered and our research has disclosed none. However, there are many cases treating the right to an evidentiary hearing, before a decision is made respecting one's rights.

In *Armstrong v. Manzo*, 380 U.S. 545, 14 L. Ed. 2d 62, 85 S. Ct. 1187 (1965) a party sought to adopt a child without having given notice of the adoption proceedings to the natural father. The adoption was granted and, upon appeal, the Supreme Court reversed, holding that the natural father was constitutionally entitled to notice prior to the adoption of the child.

In *Fuentes v. Shevin*, 407 U.S. 67, 32 L. Ed. 2d 556, 92 S. Ct. 1983 (1972) property was seized by reason of a prejudgment writ of replevin in an ex parte proceeding without any hearing or prior notice to the owner of the property. The Court held that because it permitted a deprivation of property without due process of law by denying an opportunity to be heard before the chattels were taken from the possessor, such seizure was invalid.

In *Mathews, Secretary v. Eldridge*, 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976), Eldridge's social security benefits were terminated and he challenged the consti-

tutionality of the termination procedures. He claimed that such procedures did not afford him a hearing. The Court held that the procedures prescribed, which did afford him the opportunity of a full evidentiary hearing prior to any final administrative action, as well as subsequent judicial review, met the constitutional requirements of the due process clause of the constitution. However, since he chose not to take advantage of the rights offered by such procedures, he was not deprived of procedural due process. *See also, Anderson v. George,* ____ W.Va. ____, 233 S.E.2d 407 (1977); *North v. W. Va. Board of Regents,* ____ W.Va. ____, 233 S.E.2d 411 (1977); and *Persinger v. Edwin Associates,* ____ W.Va. ____, 230 S.E.2d 460 (1976).

In all of the cases cited above and in many other cases examined, those claiming the right to a hearing prior to a decision by the deciding authority seek to protect a right or a personal liberty which will be directly affected by the action complained of. In the instant case the property of the relators will not be surface mined under this permit. The permit does not give the permittee any right to take or directly affect any property not included in the application. At most, there is a possibility that the relator's property could be indirectly affected by the rights granted under the permit.

While we in no manner minimize the seriousness of the possibility of damage to the relator's property, we are considering here a constitutional right—the right to a hearing under the due process clause of our state and federal constitutions. We do not believe that the right of the relators in this case rises to the stature of the right of one whose property or liberty is being taken by authoritative action. Here, as noted, the feared damage is only a possibility. The prevention of such possibilities, or the minimizing of the chance thereof, are duties of the officers and employees of the Department of Natural Resources. Also, should such damage occur, the relators have recourse to the courts. Such relators simply are not in a posture to allege that their property is being taken without due process of law.

Consonant with the reasoning in *Mathews, Secretary v. Eldridge, supra*, we are of the opinion that the procedures provided in Article 6, Chapter 20 of the *Code* afford adequate protective measures to all who object to the actions of the Department. One is permitted to register a protest prior to the issuance of the surface mining permit (*Code*, 20-6-8); he is thereafter afforded the opportunity to participate in a full evidentiary hearing (*Code*, 20-6-28); and, should he feel aggrieved by the results of such hearing, he has the right to have such results judicially reviewed by appeal to a circuit court and ultimately to this Court should he desire. (*Code*, 20-6-29)

To afford any and all who desire to object to an application for surface mining a constitutional right to a full evidentiary hearing prior to the issuance of the permit could and probably would result in an administrative catastrophe. The statute does not limit to any number or area those who may protest; therefore, those who oppose surface mining generally, and there are many, could demand a hearing prior to the issuance of any permit. This would create chaos and could virtually grind surface mining to a halt. We do not here comment on the merit or demerit of surface mining. Suffice to say that the Legislature recognizes such mining as a legal enterprise and has provided for the manner in which it shall be conducted.

In the case at bar the relators did not avail themselves of the administrative remedies afforded them. *W.Va. Code*, 1931, 20-6-28, as amended, supplies such administrative remedies in the following words:

> Any person claiming to be aggrieved or adversely affected by any rule and regulation or order of the reclamation commission or order of the director or by their or his failure to enter an order may appeal to the reclamation board of review for an order vacating or modifying such rule and regulation or order, or for such order as the commission or director should have entered. ... The board shall hear the appeal de novo, and any party to the appeal may submit evidence.

As herein noted, should a party be aggrieved by the ruling, judicial review thereof is available under *W.Va. Code*, 1931, 20-6-29, as amended.

These relators chose not to follow the statutory procedures alluded to above, but sought relief through the extraordinary remedy of mandamus. This Court said in Point 2 of the Syllabus in *State ex rel. Kucera v. The City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969), "A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of the respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." See also *Hall v. Protan, Sheriff*, 156 W.Va. 562, 195 S.E.2d 380 (1973).

It is clear that in the circumstances of this case, the relators did have another adequate remedy. They are therefore not entitled to relief by mandamus. "The general rule is that where an administrative remedy is provided by statute or by rules and regulations having the force and effect of law, relief must be sought from the administrative body and such remedy must be exhausted before the courts will act." Point 1, Syllabus, *Daurelle v. Traders Federal Savings and Loan Association of Parkersburg*, 143 W.Va. 674, 104 S.E.2d 320 (1958). *See also, Gooden v. Bonar, Superintendent*, 155 W.Va. 202, 183 S.E.2d 697 (1971).

We have considered the other grounds relied upon for the relief sought and find them to be without merit. While we do not deem the deficiencies in the surface mining application of sufficient gravity, in the circumstances of this case, to warrant the revocation of the subject permit, we admonish the Department that in the future compliance with statutory requirements should be made and the required information should be supplied by an applicant for a permit prior to the publication provided in *W.Va. Code*, 1931, 20-6-8, as amended. *See*, Point 1, Syllabus, *Powell v. Brown, Superintendent*, ____ W.Va. ____, 238 S.E.2d 220 (1977), wherein the Court said, "An administrative body must abide by the rem-

edies and procedures it properly establishes to conduct its affairs."

The writ of mandamus, as prayed for in the petition, is denied.

*Writ denied.*

MILLER, JUSTICE: *dissenting:*

My dissent is predicated on the fact that I believe it is the clear intent of the Legislature that the remedy of mandamus be available against the Director of the Department of Natural Resources, when it provides in *W.Va. Code*, 20-6-11:

> "The failure of the Director to discharge the mandatory duty imposed on him by this section shall be subject to a writ of mandamus, in any court of competent jurisdiction by any private citizen affected thereby."

The majority does not discuss this section, but concludes under our general law that a writ of mandamus is ordinarily not available if there is another adequate remedy, citing *Hall v. Protan*, 156 W.Va. 562, 195 S.E.2d 380 (1973), and *State ex rel. Kucera v. The City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969).

However, this is not a mandamus action brought under our general law, but is specifically grounded on the authority of *W.Va. Code*, 20-6-11. We recognized in *State ex rel. Blankenship v. McHugh*, W.Va., 217 S.E.2d 49, (1975), that the Legislature had the power to enlarge the writ of mandamus by making it applicable to matters where historically it was not available. *McHugh* relied on *Boggess v. Buxton*, 67 W.Va. 679, 69 S.E. 367 (1910). There, this Court held that the Legislature had the power to expand the writ of mandamus to cover election officials so that through mandamus they could be compelled to perform their duties.

There can be little doubt that *W.Va. Code*, 20-6-11, grants to the Director the power to prevent strip mining where undue damage will result to the environment.

The introductory paragraph states in clear and unequivocal terms the Legislature's policy:

"The legislature finds that there are certain areas in the State of West Virginia which are impossible to reclaim either by natural growth or by technological activity and that if surface mining is conducted in these certain areas such operations may naturally cause stream pollution, landslides, the accumulation of stagnant water, flooding, the destruction of land for agricultural purposes, the destruction of aesthetic values, the destruction of recreational areas and the future use of the area and surrounding areas, thereby destroying or impairing the health and property rights of others, and in general creating hazards dangerous to life and property so as to constitute an imminent and inordinate peril to the welfare of the State, and that such areas shall not be mined by the surface-mining process."

Moreover, this section goes on to state that no application "shall be approved" if the Director finds that the proposed mining operation will violate the provisions of the entire surface mining and reclamation statute, *W.Va. Code*, 20-6-1, *et seq.*, and the regulations promulgated thereunder. Also contained in Section 11 are additional powers granted to the Director to delete areas from the proposed application, deny the permit or take action to prevent environmental damage.[1]

---

[1] "If the director finds that the operation will constitute a hazard to a dwelling house, public building, school, church, cemetery, commercial or institutional building, public road, stream, lake or other public property, then he shall delete such areas from the permit application before it can be approved.

"The director shall not give approval to surface mine any area which is within one hundred feet of any public road, stream, lake or other public property, and shall not approve the application for a permit where the surface-mining operation will adversely affect a state, national or interstate park unless adequate screening and other measures approved by the commission are to be utilized and the permit application so provides: Provided, that the one-hundred-foot restriction aforesaid shall not include ways used for ingress and egress to and from the minerals as herein defined and the transportation of the removed minerals, nor shall it apply to the

In my view the scope of *W.Va. Code*, 20-6-11, is sufficiently broad that in those instances where it can be shown that an application for a surface mining permit violates the mandatory requirements of *W.Va. Code*, 20-6-1 *et seq.*, and the Director has failed to enforce these mandatory statutory requirements or his regulations, a private citizen affected thereby may institute a mandamus action to compel him to do so.

The term "private citizen affected thereby" used in the last sentence of *W.Va. Code*, 20-6-11, must be taken to mean, even in the most limited context, persons who live in the immediate area where the surface mine operations are to be conducted. The plain meaning of the policy statement and the other prohibitory language set out in *W.Va. Code*, 20-6-11, speak of the area surrounding the location of the proposed surface mine.

Certainly the majority opinion recognizes that persons directly affected by the proposed strip mining operation have standing to invoke the administrative procedures set out in *W.Va. Code*, 20-6-8, -28 and -29. The point that is overlooked, however, is that the Legislature must have intended some additional remedy by including the right to a mandamus action in *W.Va. Code*, 20-6-11.

I believe the legislative meaning is clear. It intended that mandamus could be used where the application and supporting documents clearly show that the proposed surface mine operation is violating some mandatory requirement of the statute or regulations published under it, and the Director is not taking appropriate action to enforce the mandatory requirements.

It is at this point that a writ of mandamus is statutorily authorized to settle the matter in an expeditious

---

dredging and removal of minerals from the streams or watercourses of this State.

"Whenever the director finds that ongoing surface-mining operations are causing or are likely to cause any of the conditions set forth in the first paragraph of this section, he may order immediate cessation of such operations and he shall take such other action or make such changes in the permit as he may deem necessary to avoid said described conditions."

fashion. A clear-cut legal issue is now involved: Are the mandatory duties of the Director being discharged?

The administrative remedy is not adequate if the Director chooses to ignore the statutory provisions and issues a permit. The only administrative remedy is an appeal under *W.Va. Code*, 20-6-28. Under this section, however, it is specifically provided:

> "The filing of an appeal provided for in this section shall not stay execution of the order appealed from."

Obviously, and as happened in this case, once the application for a surface mining permit is approved by the Director, the mining company is free to commence surface mining, and even though an aggrieved party appeals, the mining activity will not be interrupted. Since surface mining applications usually are filed for a limited area of land, it is quite possible that before the administrative appeal procedure is completed the mine operations will be finished, or at least substantially so. In any event, the damage will have been done to the aggrieved party.

The Legislature was undoubtedly aware of that portion of *W.Va. Code*, 20-6-28, preventing a stay of the Director's order on appeal to the Reclamation Appeal Board. It chose to alleviate the effect of the provision in those limited instances where there was a direct violation of statutory or regulatory requirements. For this reason, the Legislature authorized the remedy of mandamus in *W.Va. Code*, 20-6-11. For this reason, I would have awarded the writ of mandamus.

I am authorized to state that Justice McGraw joins with me in this dissenting opinion.