313 S.E.2d 456

**STATE ex rel. Gareth W. NORTON**

v.

**Ward D. STONE, Jr., etc., et al.**

**No. 16045.**

Supreme Court of Appeals of West Virginia.

March 2, 1984.

Jolyon W. McCamic, McCamic & McCamic, Wheeling, for appellants.

Ann V. Gordon, Asst. Atty. Gen., Charleston, for appellee.

NEELY, Justice:

The petitioner in this original proceeding in mandamus, Gareth W. Norton, asks this Court to order the Board of Regents to award him tenure as a college professor.

Professor Norton was hired by West Liberty State College in the Fall of 1977 as Chairman of the Department of Sociology and Public Service; his rank was assistant professor and he was expected to teach social work and criminal justice. In September, 1981 he was promoted to associate professor and he has continued to serve as chairman and continued to teach. Throughout his employment at the college he received good evaluations both as a teaching faculty member and as an administrator.

During Professor Norton's fifth year at the college he applied for tenure. The process by which a member of the faculty of a state institution of higher education is evaluated for tenure is governed by Paragraph 7(c) of the Board of Regents Revised Policy Bulletin No. 36 [8 May 1979]. The West Liberty Faculty Handbook interprets this provision as follows:

c. Tenure shall not be granted automatically, or for years of service, but shall result from action by the president of the institution following consultation with appropriate academic units.

[West Liberty State College's interpretation of *action by the president of the institution following consultation with the academic units* concerned

Applies to the tenure-decision year for a professor.

A committee comprised of the full-time tenured faculty of a department, other than the chairperson and director, shall meet to consider tenure recommendations for faculty in their tenure-decision year. The committee has the responsibility to send a letter to the president by the end of the first semester either recommending or not recommending tenure for a specific professor. Copies of the letter are to be sent to the professor, chairperson, director, and academic dean.

Because there was only one full-time tenured faculty member within the Department of Sociology and Public Service, the academic dean suggested to Professor Norton that rather than follow the procedures set forth in the Faculty Handbook, a committee of faculty members outside the De-

partment of Sociology and Public Service be appointed to evaluate Professor Norton's tenure application. Professor Norton objected to this procedure and the one full-time faculty member in the department over which the petitioner presided was subsequently appointed as the tenure evaluation committee.

As might have been expected, the committee recommended tenure, and because the petitioner was the chairperson of the department, he did not make a recommendation. The director of the school, however, recommended that tenure be denied. Following the recommendation of the director of the school, the academic dean also recommended that tenure be denied.

On 13 May 1983, President James L. Chapman of West Liberty State College wrote to Professor Norton that he had considered the materials submitted by Professor Norton in support of the tenure application and the recommendations of the director of the School of Social Sciences and the recommendation of the academic dean and that he was denying Professor Norton's application for tenure. In the same letter he offered Professor Norton a one year, terminal contract as is required by Board of Regents Policy Bulletin No. 36. Pursuant to Paragraph 8(f) of Board of Regents Policy No. 36 Professor Norton appealed his final non-retention decision to the Board of Regents, who then appointed the respondent in the case before us, Ward D. Stone, Jr., as impartial hearing examiner.[1]

Mr. Stone proceeded to give the petitioner a full hearing and concluded that Dr. Chapman's decision to deny Professor Norton tenure was "tainted" by Dr. Chapman's consideration of sixteen unsolicited letters to which Professor Norton had not had an opportunity to respond. The hearing examiner concluded that Professor Norton should have had an opportunity to present other letters from social agencies and students that might explain some or all of the negative incidents contained in the sixteen unfavorable letters that President Chapman had considered. However, the hearing examiner did not find that the denial of tenure to Professor Norton was arbitrary and capricious. Rather, he found a due process violation and concluded that Professor Norton should be given an additional year of regular, rather than terminal, employment during which he should be reevaluated for tenure by a new, broad-based tenure review committee composed of at least three tenured faculty members from outside the school of social sciences who should make a recommendation directly to the president. Mr. Stone's recommendation concluded as follows:

"This committee should receive all written evidence submitted, but not any oral testimony. All evidence submitted should be made available to Gareth W. Norton so that he can respond, if necessary. President Chapman should then make his decision based only on the recommendation of the committee and on all of the materials, documents, letters and other evidence that had been considered by the committee. If the tenure review

1. Paragraph 8(f) of Board of Regents Policy Bulletin No. 36 [8 May 1979] provides in its entirety as follows:

A probationary faculty member desiring to appeal a final nonretention decision at the institutional level may file an answer and a request for a hearing in the form of a certified letter, return receipt requested, at the Central Office of the Board of Regents within ten days of the receipt of notice stating the reasons for nonretention. If the faculty member fails to file a timely answer and request for a hearing, the notice of nonretention shall be final. Upon receipt of an appeal request, the Board shall appoint either a hearing examiner (under Number 13–c) or an unbiased committee of the Board to hold a hearing on the campus within thirty days of the receipt of the certified appeal letter.

In the instance of a hearing examiner, the individual will be a duly qualified disinterested attorney-at-law licensed to practice law in the State of West Virginia. Notice of the time, date and place of the hearing shall be provided simultaneously to the concerned parties by certified mail, return receipt requested.

It is the sole duty and responsibility of either the hearing examiner or the unbiased committee of the Board to determine whether the reasons given for nonretention are arbitrary, capricious or without factual basis. The hearing shall be conducted in accordance with the rules set forth in Section 13–c of this policy.

process of the Faculty Handbook is followed, the same persons will again be involved and, considering what has transpired in the last year, this would not be fair to the evaluators or to Gareth W. Norton."

■ We believe this recommendation was a sensible and proper one. Although this Court has a long-standing concern with the procedural propriety of administrative hearings, we have also recognized that technical deficiencies should not negate adjudications that are essentially fair. In Syllabus Point 6 of *Kanawha Valley Transportation Co. v. Public Service Commission*, 159 W.Va. 88, 219 S.E.2d 332 (1975) we held that, "Where an administrative agency entertains both proper and improper evidence and the proper evidence is sufficient to sustain its order, the reviewing court will not reverse unless it is clear that the agency rested its conclusions primarily on the improper evidence." In this case, the extent to which Dr. Chapman's decision was influenced by the improper evidence is not clear. Furthermore, the statute explicitly states that formal rules of evidence do not apply in the tenure process. Therefore, we believe that whatever injury Professor Norton sustained is adequately compensated by giving him an additional year of employment and the guarantee of a proper tenure review at the end of that year.

■ Instead of appealing the decision of the Hearing Examiner to the Board of Regents, Professor Norton chose instead to come to this Court by mandamus. We believe that in light of *W.Va.Code*, 18–26–8c [1979] and the express language of Board of Regents Revised Policy Bulletin No. 36 [8 May 1979] the petitioner is not entitled to mandamus relief. In Syllabus Point 2 of *McGrady v. Callaghan*, 161 W.Va. 180, 244 S.E.2d 793 (1978), we held: "A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of the respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." Thus, Professor Norton's failure to pursue the adminis-

trative remedy of appeal to the Board of Regents is itself a bar to mandamus relief. Furthermore, Professor Norton seeks relief to which he does not have a clear legal right and seeks that we compel the hearing examiner to take an action which is not his legal duty.

■ Paragraph 7(c) of Policy Bulletin No. 36 quoted *supra* specifically provides that tenure shall not be granted automatically, or for years of service. Thus, Professor Norton has no clear legal rights to tenure. Paragraph 8(f) of Policy Bulletin No. 36, quoted *supra*, at footnote 1 provides that the sole duty and responsibility of the hearing examiner in a case such as the one before us is to determine whether the denial of tenure was arbitrary, capricious, or without factual basis. Paragraph 8(g) of Policy Bulletin No. 36 then goes on to provide the remedy. That section says:

Answer and Service: The decision shall be submitted to both parties within (30) days of the conclusion of the hearing with copies of said decision and the record of the hearing going to the faculty member, the president and the Central Office of the Board of Regents. If the reasons for the nonretention are adjudged to be arbitrary, capricious or without factual basis, the faculty member shall be retained for the ensuing contract year.

Policy Bulletin No. 36 is in complete accord with *W.Va.Code*, 18–26–8c [1979] which provides in part:

If the Committee of the Board or the Hearing Examiner shall conclude that the reasons for non-retention are arbitrary or capricious or without a factual basis, the faculty member shall be retained for the ensuing academic year.

Consequently it appears to us that the procedures outlined in *W.Va.Code*, 18–26–8c [1979] and Board of Regents Policy Bulletin No. 36 [8 May 1979] have been met to the letter. Mr. Stone, as a hearing examiner, had discretion to grant an additional year of employment. We reject petitioner's argument that Mr. Stone was limited to the ultimate finding that petitioner was either entitled to permanent tenure or should be terminated.

The thrust of the petitioner's argument is that the Hearing Examiner's authority is limited to a decision concerning whether the actions by the president of the institution are arbitrary, capricious or without factual foundation. Although Mr. Stone was tactful in trying to avoid characterizing Dr. Chapman's actions as arbitrary and capricious, he nevertheless specifically found a failure of due process. In effect, then, Mr. Stone decided that the decision of Dr. Chapman was "without factual basis" and he proceeded to award the relief that both the statute and Policy Bulletin No. 36 provides, namely an additional year of non-terminal employment.

Although we can envision a situation in which the president arbitrarily denies tenure, the hearing examiner finds arbitrary denial and awards an additional year of employment, the president again arbitrarily denies tenure and the hearing examiner again finds arbitrary denial and awards an additional year of employment, and so on *ad infinitum*, that is not the case before us. Indeed, as we read Mr. Stone's very thorough and exhaustive findings of fact we are persuaded that there was ample evidence on behalf of Professor Norton to justify an award of tenure. On the other hand, there was also ample unfavorable evidence that would have justified the president in denying tenure. The difficulty in this case arose largely because there were not sufficient tenured faculty members in petitioner's department to constitute a reliable tenure evaluation committee, and because evidence was submitted to President Chapman in the form of *ex parte* letters that were unsolicited by President Chapman but which were arduously solicited by Professor Norton's detractors. The Hearing Examiner was entirely correct, then, in awarding Professor Norton an additional non-terminal year of employment and suggesting an impartial procedure that would be in the spirit of Policy Bulletin No. 36 but that would, nonetheless, avoid the disadvantages to the petitioner inherent in his position as Chairman of a very small department.

The petitioner argues that the requirement in *Code,* 18–26–8c and Paragraph 8(g) Policy Bulletin No. 36 that a decision by the hearing examiner be rendered within 30 days was not complied with and that the hearing examiner held his hearing more than 30 days after the receipt of the certified appeal letter. In *Clarke v. W. Va. Board of Regents,* 166 W.Va. 702, 279 S.E.2d 169, 179 (Fn. 5) (1981), we stated that the fact that the hearings process took a full year did not constitute a due process violation because it did not prejudice the interests of the teacher and the delays were not the fault of either party but resulted from clerical, typing and other logistical problems. In light of the fact that the hearing examiner in this case prepared a report of roughly forty-five hundred words and was required to evaluate and explain an enormously complex case, we find that there has been substantial compliance with the time requirements set out in the Policy Bulletin and the *Code.* Furthermore, we find that the petitioner has suffered no injury as a result of any deviation from the time requirements because he received the maximum relief to which he was entitled under the *Code* and the regulations. As we noted in *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979), a case dealing with writs of prohibition, extraordinary remedies should only be used to correct substantial, clear-cut, legal errors in cases where there is a high probability that the error prejudiced the result below. The case before us simply does not fit that principle.

Accordingly, for the reasons set forth above we find that the respondents have in no way failed to perform a clear, non-discretionary, legal duty; the rule to show cause heretofore issued is discharged and the relief in mandamus for which the petitioner prays is denied.

Writ denied.