575 S.E.2d 267

Antonetta KARLE, Appellant
Below, Appellant,

v.

BOARD OF TRUSTEES/MARSHALL
UNIVERSITY, Appellee Below,
Appellee.

No. 30410.

Supreme Court of Appeals of
West Virginia.

Submitted Nov. 6, 2002.
Decided Dec. 2, 2002.

Raymond A. Nolan, Esq., Huntington, for Appellant.

Darrell V. McGraw, Jr., Attorney General, Jendonnae L. Houdyschell, Assistant Attorney, General, Charleston, for Appellee.

PER CURIAM.

In the instant case we affirm a June 4, 2001, decision of the Circuit Court of Cabell County. That decision upheld an April 9, 1999 decision of the West Virginia Education and State Employees Grievance Board ("Grievance Board") affirming the decision of Marshall University to deny the appellant's application for tenure.

### I.

The appellant, Antonetta Karle, became employed by the Marshall University School of Nursing in 1992 as an instructor. She was promoted to assistant professor in 1996; she submitted her tenure application in 1998. The application was reviewed by a faculty affairs committee that unanimously voted to recommend denial of tenure. The committee's recommendation was reviewed by three deans of nursing, who also recommended denial. These recommendations were forwarded to the President of the University, who denied tenure. The appellant appealed this denial by filing an internal grievance; this was decided against her, and she appealed her grievance to a hearing before a Grievance Board administrative law judge ("ALJ") who issued a decision on April 19, 1999, affirming the denial of tenure. This decision was appealed to the circuit court, which on

June 14, 2001 affirmed the ALJ's decision. The instant appeal followed.

### II.

In reviewing the decision of a Grievance Board ALJ, both this Court and the circuit court employ the same standard of review:

A final order of the hearing examiner for the West Virginia Educational Employees Grievance Board, made pursuant to *W. Va. Code*, 18–29–1, *et seq.* (1985), and based upon findings of fact, should not be reversed unless clearly wrong.[1]

Syllabus Point 1, *Randolph County Board of Education v. Scalia*, 182 W.Va. 289, 387 S.E.2d 524 (1989). However, appellate deference in such cases is only as to matters of fact. As to matters of law, the ALJ's findings and conclusions are reviewed *de novo*. See *Harry v. Marion County Bd. of Educ.*, 203 W.Va. 64, 66, 506 S.E.2d 319, 321 (1998).

The appellant, Ms. Karle, makes several arguments on appeal as to why the circuit court's decision should be reversed; these arguments and the pertinent facts are discussed hereinafter *seriatim*.

### A.

*Procedural Non–Compliance Prior to The Tenure Review Process*

Appellant asserts that Marshall violated its own procedures in not conducting either a formal annual evaluation of appellant's performance or a third-year tenure review. Series 36 of the Procedural Rules promulgated by the University System of West Virginia Board of Trustees addresses the "appointment, promotion, tenure and non-reappointment or dismissal of faculty...." 128 C.S.R. 36 § 1.1 [1997]. Section 10.1 of these rules states: "All faculty shall receive a yearly evaluation of performance directly related to responsibilities as defined by the institution." 128 C.S.R. 36 § 10.1. [1997]. In addition, the Marshall University *Greenbook* (the official University handbook)

---

1. The Grievance Board was renamed in 1998 to reflect the inclusion of other State employee grievances. See *W.Va.Code*, 29–6A–5 [1998].

states: "A formal evaluation of progress toward tenure should be conducted during the third year of employment."

The evidence below showed that at the end of her first semester teaching with Marshall, appellant received a Supervisor's Evaluation, which rated her performance in five categories: "Instructor/Advising," "Scholarly/Creative Activities," "Service to University," "Service to Community," and "Professional Goals Other Than the Above." During this evaluation in December of 1992 the appellant was specifically encouraged to pursue a doctoral degree.

Appellant subsequently received written evaluations for the 1993–1994, 1995–1996, and 1997–1998 academic years. In her evaluation for the 1993–1994 evaluation period, Lynne Welch, Dean of the School of Nursing, rated appellant's overall performance as "Satisfactory" and noted that she needed improvement in the area of "Scholarly/Creative Activities." Dean Welch further noted that appellant had "not presented programs or papers, published or done research." In an evaluation for the 1995–1996 evaluation period, appellant was again rated as overall "Satisfactory," with deficiencies in the "Scholarly/Creative Activities" area. During this evaluation, Dean Welch again noted that appellant "needed to pursue her doctorate and publications." It was further noted that students had complained that she failed to keep office hours. Finally, for the evaluation period 1997–1998, Dean Welch gave appellant an overall rating of "Needs Improvement." In the evaluation, Dean Welch noted that appellant had failed to meet with students, and that she needed to pursue doctoral studies, research and publications. In addition, Dean Welch met with appellant every year to evaluate the appellant's performance, at which time requirements for tenure and appellant's deficiencies were discussed.

Marshall denies that it violated its own policy in regard to the third-year tenure review—which by its terms is discretionary, not mandatory. However, Marshall concedes that it failed to conduct formal annual evaluations of appellant for the academic years 1994–1995 and 1996–1997. It is undisputed that appellant was given a copy of the *Green-book*, containing the requirements for obtaining tenure, when she was hired.

The evidence shows that the appellant was indisputably and fully aware of the requirements for tenure, and was advised repeatedly throughout her career of perceived deficiencies in her progress toward tenure. Dean Welch did not recommend appellant for tenure for the following stated reasons:

> She is not outstanding in any of the categories of teaching and advising; scholarly or creative activities or community and/or university science. Specifically with regard to her teaching and advising she was not available to students for advisement during scheduled hours. We had student complaints regarding her lack of availability. Her student evaluations are not outstanding. Students also complained about her not being in the clinical area on time.
>
> With regard to scholarly and creative activities she has not published or participated in research outside of her masters and certificate programs.
>
> Her community and university services are average.

Similarly, the faculty affairs committee did not recommend appellant for tenure based upon the lack of supporting evidence contained within the appellant's portfolio.

■ We conclude that any failure by the University to provide formal notice, as a result of the missed annual evaluations, does not under these facts constitute a denial of due process, inasmuch as the appellant had previously and repeatedly received actual notice of her deficiencies. *See, e.g., State ex rel. Mason v. Roberts,* 173 W.Va. 506, 318 S.E.2d 450 (1984) (lack of formal notice did not constitute a denial of due process where licensee had actual knowledge of suspension).

In these circumstances, the ALJ (though aware of and concerned about the acknowledged procedural deficiencies) found that these deficiencies did not deny due process and did not affect the outcome of appellant's tenure review. The Circuit Court of Cabell County, in affirming the decision of the ALJ, stated:

The ALJ here clearly considered all of the relevant factors in determining whether Marshall's failure to conduct these evaluations was improper. There is evidence in the record to support the ALJ's findings of fact in this regard, and her conclusion that any error was harmless was not implausible. Accordingly, this Court cannot find that the ALJ's decision was clearly wrong or arbitrary and capricious.

## B.

### Due Process in the Tenure Review Process

Appellant asserts that the tenure review process itself denied her due process of law. The first inquiry is the determination of what process is due.

> Indeed, the process due one subject to this highly subjective evaluative decision [tenure] can only be the exercise of professional judgment by those empowered to make the final decision in a way not so manifestly arbitrary and capricious that a reviewing court could confidently say of it that it did not in the end involve the exercise of professional judgment.... This in turn means that insuring the adequacy of process as followed in a particular case does not require or permit a court to inquire into the ultimate wisdom, or prudence, or informed nature of the decision finally made. The judicial inquiry is properly only whether the decision was made, wisely or not, by a specific exercise of professional judgment and on the basis of factors clearly bearing upon the appropriateness of conferring academic tenure.

*Siu v. Johnson,* 748 F.2d 238, 245 (4th Cir. 1984) (citations omitted).

■ At the Grievance Board hearing, Becky Rider, a member of the faculty affairs committee that reviewed the appellant's tenure application, testified that she could not recall reviewing the appellant's application and portfolio before voting to deny tenure. She also testified that she felt the committee did not take long enough to review the appellant's application.

However, Professor Rider agreed that she did not know how long the appellant's portfolio was reviewed by other committee members, two of whom testified that they spent considerable time on the application. Professor Rider also agreed that appellant's application was discussed at the committee meeting, and it is uncontested that all four members present (one member was on sabbatical) participated in the discussion, before voting unanimously to recommend against tenure. At most, Professor Rider's testimony amounts to the fact that she herself did not read or spend enough time reviewing the appellant's tenure portfolio.

Assuming that Professor Rider did not fulfill her obligation, the appellant has not demonstrated how she was prejudiced by this fact. Three other members of the committee, a majority, voted to recommend against tenure. Professor Rider herself agreed that appellant was not an outstanding teacher and that Rider would not change her vote, even if given more time to review the tenure application. Moreover, review by the committee was only a "first step" in the tenure process. The appellant's tenure application was independently reviewed at least three more times. Dr. Sortet, Dr. Morton, Dean Welch and Dr. McKown all recommended against tenure, and the ultimate decision to deny tenure was made by President Gilley. Everyone who reviewed the appellant's tenure portfolio concluded that it did not demonstrate the required performance for an award of tenure.

■ We conclude that Marshall University substantially complied with the procedure spelled out in their *Greenbook* for considering tenure application. The record demonstrates that the decision to deny appellant tenure was based upon the exercise of professional judgment and on the basis of factors bearing upon the appropriateness of conferring academic tenure. Additionally, the ALJ concluded that appellant failed to prove that the outcome of her tenure review would have been any different had Professor Rider read her tenure application, and that any procedural irregularities in the process were therefore, even if erroneous, harmless. The Circuit Court of Cabell County, in affirming the decision of the ALJ, stated:

The ALJ here clearly considered all of the relevant factors in determining whether the absence of one Committee member and the dereliction of a second would have had an impact on Marshall's decision to deny the Grievant tenure. There is evidence in the record to support the ALJ's findings of fact in this regard, and her conclusion that any error was harmless was not implausible. Accordingly, this Court cannot find that the ALJ's decision was clearly wrong or arbitrary and capricious.

## C.

### Clearly Wrong

■ Appellant's final assignment of error is that the ALJ was clearly wrong in concluding that the appellant was not entitled to tenure. As noted above, the *Greenbook* requires an applicant for tenure to demonstrate effective performance in all of the stated categories, as well as excellence in either teaching/advising or scholarly/creative activities. However, the appellant did not demonstrate the required "excellence;" she never received higher than an "overall satisfactory" performance rating.

In addition, Series 36 of the Procedural Rules states that "[t]enure shall not be granted automatically, or for years of service, but shall result from action by the president of the institution or designee following consultation with appropriate academic units." 128 C.S.R. 36 § 8.3 [1997].

■ Under the "clearly wrong" standard, "the question before the court is not whether the tenure decisions of the University are correct; it does not sit as a 'Super–Tenure Review Committee.'" *Varma v. Bloustein*, 721 F.Supp. 66, 71 (D.N.J.1988) (citation omitted). Appellant has no clear right to tenure, and it is the responsibility of this Court to determine if the denial of tenure was arbitrary, capricious or clearly wrong. *See State ex rel. Norton v. Stone*, 173 W.Va. 179, 313 S.E.2d 456 (1984). The subjective decision process by which promotion and tenure are awarded or denied must be left to the professional judgment of those presumed to possess a special competency in making the evaluations, unless shown to be arbitrary and capricious or clearly wrong. *See Kobrin v. Univ. of Minn.*, 121 F.3d 408 (8th Cir.1997); *Siu v. Johnson, supra.*

Juries and judges lack the credentials and the knowledge to determine whether a group of scholars should be required to accept into their midst for life a member of the academic community. When a decision to grant or deny institutional tenure has been reached, the constitutional protections against arbitrary state action accorded by the due process clause, and against the denial of equal treatment, guaranteed by the equal protection clause, assure that state institutions will reach their decisions in a procedurally fair manner and that their decisions will be rationally based on considerations relevant to future academic performance.

*Levi v. University of Texas at San Antonio*, 840 F.2d 277, 282 (5th Cir.1988).

Marshall University produced substantial evidence that appellant did not, despite repeated admonitions, demonstrate effectiveness in the critical area of advising. Further, Marshall University presented evidence that appellant's performance in the area of scholarly and creative activities was inadequate.

"Scholarly and creative activities" are defined in the *Greenbook* as follows:

... number, quality and importance of publications and creative productions; memberships and contributions to professional societies; professional growth and development; scholarly presentations and creative performances; contributions to the professional development and achievement of colleagues, etc.

Dean Welch rated appellant's performance in this category below average. Dr. Jane Fotos and Professor Lou Ann Hartley, who were members of the faculty affairs committee, found no evidence of scholarly and creative activities in the portfolio outside those required of her as a student in the Family Nurse Practitioner ("FNP") program. In these circumstances, appellant's performance in the area of scholarly and creative activities could be seen as not even effective, much less excellent.

The principal evidence offered by appellant in the category of Scholarly and Creative Activities was a research project on childhood obesity that was developed by appellant in 1996 as a class project while she was a student in the FNP program. The project was never published, and Dean Welch and Dr. Jane Fotos, a member of the faculty affairs committee, testified that this project did not constitute "scholarly research" for purposes of tenure. Appellant also produced evidence that she had made editorial suggestions to publishers of prospective textbooks, a one-paragraph abstract of a patient pamphlet on nocturnal enuresis, and a proposal for an adult learning workshop at the Veterans' Administration Medical Center. However, there is no evidence that these materials or any other of appellant's work had been published or that she had made presentations to professional or scholarly groups.

Marshall University, as noted, presented evidence that appellant had consistently been advised that she needed improvement in this area. Dean Welch rated appellant's performance in this category as below average. Dr. Fotos and Professor Hartley, members of the faculty affairs committee, found no evidence of scholarly and creative activities in the portfolio outside those required of her as a student in the FNP program. In these circumstances, appellant's performance in the area of scholarly and creative activities could be seen as less than effective.

The ALJ found "scant" evidence of scholarly and creative activities in the appellant's tenure portfolio—and also that the appellant had produced none since receiving her FNP certificate in 1996. The ALJ concluded that her performance was not even effective in this area.

Upon review, the Circuit Court of Cabell County stated:

> The ALJ clearly considered all of the relevant evidence submitted by the parties regarding [appellant's] performance in this area. There is substantial evidence to support her conclusion that the [appellant] failed to demonstrate effective performance in this area. In view of the [appellant's] failure to even address this issue, this Court must uphold the ALJ's findings and conclusions on this point.

It is evident from a review of the record in this case that the Circuit Court of Cabell County carefully reviewed the decision of the ALJ, and found that there was sufficient evidence in the record to support the ALJ's findings of fact; and that the legal conclusions made by the ALJ were correct.

III.

This Court recognizes that there was evidence in the record that the appellant was highly regarded as a clinical teacher by her students, and we have no doubt that she indeed is an accomplished clinical practitioner and teacher of nursing. We also recognize that her teaching itself was not actually observed by those who evaluated her for tenure. Additionally, the asserted deficiencies in her tenure review process were thoroughly explored and ably presented in her grievance proceeding and before this Court.

These facts, however, are not dispositive of the instant case. In most instances, as in this case, achieving academic tenure requires, in addition to effective teaching, meeting other demanding criteria. The appellant was reasonably found to be lacking in meeting these criteria by all of those who reviewed her application—using a process, that while perhaps not perfect, was fundamentally fair.

The order of the circuit court is affirmed.

Affirmed.